IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| NICHOLAS MUELLER et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) Case No. 24-cv-2321-DWD |
| | ) |
| CITY OF EAST ST. LOUIS, IL et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM & ORDER**

**DUGAN, District Judge:**

Now before the Court is a discovery dispute submitted by Plaintiffs Nicholas Mueller ("Nicholas") and Shonte Mueller ("Shonte") pursuant to the discovery dispute procedures in the Court's Case management Order. (Doc. 13). The Report (attached hereto as Exhibit A) details ongoing discovery abuses by Defendants City of East St. Louis ("The City") and Robert Betts ("Betts") (collectively "Defendants") who are represented by attorneys Alvin C. Paulson and Grey R. Chatham, Jr. This is the second time Plaintiffs have been forced to seek Court intervention due to Defendants' failure to comply with discovery requests.

Also pending is Plaintiffs' previously filed motion for Attorney's fees (Doc. 26) related to Defendants' earlier discovery violations. Plaintiffs have now supplemented that motion with a request for Attorney's fees related to the instant discovery dispute. (Doc. 67).

## I. BACKGROUND

1. **The Complaint**

Nicholas and Shonte, who are married, filed a complaint alleging that The City of East St. Louis, Betts, and several additional defendants conspired to unlawfully terminate Plaintiffs. Specifically, Plaintiffs contend that when Shonte, who was a Commissioner on the Board of the City of East St. Louis Housing Authority, reported that the Housing Authority was not complying with federal law, Defendants retaliated by terminating her employment with the Housing Authority. Plaintiffs also contend that Nicholas, who was the Assistant Chief of Police for East St. Louis City, was terminated from his position with the City of East St. Louis for the same reason.

2. **Prior Discovery Dispute**

In February 2025, Nicholas and Shonte served discovery requests on Defendants. After Defendants missed the initial deadline, Plaintiffs twice extended the response date (to March 21, then April 4, 2025). Defendants failed to respond by either extended deadline, ignored Plaintiffs' outreach, and only served responses on April 7, 2025, after further prompting.

Plaintiffs moved to compel, asserting the responses were deficient:

- As to Nicholas: Defendants produced only his personnel file, failed to search for or produce internal emails or communications, gave incomplete answers to several interrogatories, and asserted meritless boilerplate objections waived by the untimely responses.

- As to Shonte: Defendants refused to respond entirely, claiming no obligation because she worked for the separate East St. Louis Housing Authority.

Defendants' response largely ignored Nicholas's requests, offered no defense of those answers, and reiterated that the Housing Authority was legally distinct. It requested another 14 days to search for documents, claiming few had been found. The Court granted the motion to compel in large part, sustaining only one objection, finding two responses adequate, and determining the remaining objections and answers were baseless, evasive, incomplete, or non-responsive. The Court ordered Defendants to serve complete responses.

Given the nature of the Defendants' conduct and deficient responses, the Court found sanctions might be warranted and directed Plaintiffs to file a petition for reasonable attorneys' fees and expenses incurred in bringing the motion.

3. **Pending Discovery Dispute**

Plaintiffs attempted to resolve the instant dispute without Court involvement, but Defendants failed to respond. Plaintiffs therefore submitted the instant Discovery Dispute Report, seeking the following:

1. An order compelling production of the disputed materials within seven days;
2. An order compelling Defendants to retain, at their own cost, a company to perform forensic imaging on any devices and email servers used by Defendant Betts and other City employees named in this lawsuit to locate material responsive to Plaintiffs' discovery requests;
3. Coercive sanctions of $500.00 per day for continued noncompliance; and

    4.      Attorney's fees incurred in connection with the preparation of the Discovery Dispute Report and related briefing.

Upon review, the Court found that the Discovery Dispute Report complied with the Case Management Order and granted Plaintiffs leave to file a motion to compel and Defendant leave to respond. (Doc. 65). The Court further advised the parties that if Plaintiffs did not file a motion to compel, and unless the parties advised that a ruling was no longer necessary, the Court would resolve the dispute based solely on Plaintiffs' Discovery Dispute Report. (*Id.*).

Plaintiffs did not file a motion to compel, and no party has informed the Court that a ruling is unnecessary. Accordingly, the Court resolves the dispute based on the Discovery Dispute Report and addresses the contested discovery matters below.

## II.   DISCUSSION

**1.  Issue No. 1 - Nicholas's RFP No. 9**

> Nick's RFP no. 9 to the City requested: "All documents reflecting wage, benefits, pension, retirement benefits and calculation, or other compensation paid to Plaintiff, including, but not limited to, pay stubs, spreadsheets, and payroll records."

Defendants produced only Nicholas's personnel file. Plaintiffs' counsel advised Defendants that the file was insufficient and repeatedly requested payroll, benefit, and pension records necessary to calculate damages. Despite multiple follow-ups, Defendants either failed to respond or failed to meaningfully supplement. To date, no responsive compensation records have been produced.

The information sought in RFP No. 9 is relevant and proportional under Rule 26(b)(1). Plaintiffs allege retaliatory termination and seek back pay, front pay, lost benefits, and lost pension and retirement contributions. A personnel file does not contain the financial data needed to quantify these losses. Payroll records, benefit summaries, and pension calculations are the only reliable sources for determining historical earnings, benefit values, and future losses. The request is narrowly tailored to Nicholas's compensation and does not seek information beyond what is necessary to calculate damages. Accordingly, RFP No. 9 seeks relevant, proportional, and discoverable information.

2. **Issue No. 2 – Discovery Non-Compliance**

Defendants produced no emails, texts, or other communications in response to Plaintiffs' discovery requests. Production from a co-defendant revealed that responsive communications exist. Further, Defendant Betts admitted in his deposition that he had not reviewed his phone or email to determine whether responsive communications exist and that no one had asked him to do so. This record demonstrates that Defendants failed to conduct a reasonable search for electronically stored information and disregarded their discovery obligations. Court intervention is therefore necessary to ensure compliance and to restore the integrity of the discovery process.

While Plaintiffs submit that forensic imaging is now warranted, the Court finds that a graduated, conditional remedy is appropriate to provide Defendants one final opportunity to comply before imposing more intrusive relief.

3. **<u>Coercive Sanction</u>**

As to both issues, Defendants' repeated noncompliance and disregard of discovery obligations justify the imposition of a coercive sanction.

Coercive sanctions are designed to compel compliance with a court order. *United States v. Dowell*, 257 F.3d 694, 699 (7th Cir. 2001). District courts have "broad discretion" to fashion remedies that serve this purpose. *Clay Financial LLC v. Mandell*, 2020 WL 13608316, at *8. In doing so, courts must consider "the character and magnitude of the harm by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired." *Autotech Techs. LP v. Integral Rsch. & Dev. Corp.*, 499 F.3d 737, 752 (7th Cir. 2007) (quoting *South Suburban Hous. Ctr. v. Berry*, 186 F.3d 851, 854 (7th Cir. 1999)).

The Seventh Circuit has expressly recognized that monetary fines may be imposed as coercive sanctions. *F.T.C. v. Trudeau*, 579 F.3d 754, 777 (7th Cir. 2009). A per diem fine is civil—and therefore permissible—so long as the contemnor has the opportunity to purge the sanction through compliance. *Int'l Union, UMWA v. Bagwell*, 512 U.S. 821, 829 (1994); *Dowell*, 257 F.3d at 699.

Here, a fine of $100 per business day is appropriate. The amount is modest, non-punitive, and directly tied to Defendants' continued noncompliance. It is sufficient to incentivize prompt compliance, yet not so large as to be punitive or disproportionate. Because Defendants can immediately avoid the fine by complying, the sanction is purely coercive and aligned with the remedial purposes of civil contempt.

4. <u>**Conclusion**</u>

For the foregoing reasons, the Court **ORDERS** as follows

1. **As to RFP No. 9:**

   a. Defendants shall, within seven (7) days of this Order, produce all documents reflecting wage, benefits, pension, retirement benefits and calculations, or other compensation paid to Nicholas, including, but not limited to, pay stubs, spreadsheets, and payroll records.

   b. This production shall include, but is not limited to, Nicholas's pension account statement showing, at a minimum, accrued benefits amount, employee contributions balance, employer contributions balance, and service credit breakdowns.

   c. Defendants shall incur a penalty of $100.00 per day, payable to Plaintiffs Nicholas and Shonte Mueller for each day Defendants are non-compliant.

2. **As to Issue No. 2:**

   a. Within ten (10) days of this Order, Defendants city of East St. Louis and Robert Betts shall complete a renewed, good-faith search and produce all responsive emails, text messages, and other electronic communications.
   b. The search shall include, at a minimum:
      i. All personal and business cell phones, computers, tablets, and email accounts used by Defendant Betts and all City employees named in this lawsuit for City business;
      ii. All relevant custodians, data sources, and date ranges consistent with Plaintiffs' discovery requests; and
      iii. Reasonable keyword and manual searches designed to locate responsive communications.
   c. Within seven (7) days after production, Defendants shall file sworn declarations from Defendant Betts and a City official with knowledge, identifying:
      i. All custodians whose data was searched;
      ii. All devices, accounts, and data sources reviewed;
      iii. The date ranges and search methods used; and
      iv. The steps taken to preserve, collect, and produce responsive materials.
   d. If Defendants fail to timely comply with any portion of this Order, or if the production is materially deficient, the Court will, without further briefing, order Defendants – at their own expense – to retain a neutral forensic

   vendor to image the relevant devices and email systems and to collect responsive material.

 e. Defendants shall incur a penalty of $100.00 per business day, payable to Plaintiffs Nicholas and Shonte Mueller, for each day they fail to comply with this Order.

### III. ATTORNEY FEES

Plaintiffs filed a Motion for Attorney's Fees in connection with the initial discovery dispute (Doc. 26) and later filed a supplemental pleading seeking fees related to the instant dispute (Doc. 67). Defendants did not respond to either filing, and the time to do so has expired. The request is therefore ripe and unopposed.

Plaintiffs' submissions show that counsel expended 2.1 hours preparing and filing the initial Motion to Compel and Motion for Attorney's Fees, at a rate of $715 per hour, for a total of $1,501.50. As to the current dispute, Plaintiffs' supplemental pleading shows that counsel spent 0.9 hours preparing the Joint Discovery Report and 1.3 hours on the supplemental briefing, for a total of 2.2 hours. Although counsel's rate increased in 2026 to $785 per hour, Plaintiffs request fees at the 2025 rate of $715 per hour, totaling $1,573.00. Together, Plaintiffs seek $3,074.50, representing 4.3 hours of attorney time at $715 per hour.

Under Federal Rule of Civil Procedure 37(a)(5)(A), when a motion to compel is granted,[1] the Court must require the party whose conduct necessitated the motion to pay the movant's reasonable expenses, including attorney's fees. This Court applies the

---

[1] Under the Court's Case management Order, a party must first file a Discovery Dispute Report before seeking court intervention. Plaintiffs complied. The Court then granted Plaintiffs leave to either file a formal motion or to stand on the report. (Doc. 66). Plaintiffs elected to stand on their report, which the Court construes as a motion to compel for purposes of Rule 37(a)95)(A).

lodestar method—multiplying a reasonable hourly rate by the number of hours reasonably expended—to determine reasonable fees. *Rackemann v. LISNR, Inc.*, 2018 WL 3328140, at *6 (S.D. Ind. July 6, 2018). Time spent on tasks closely related to a motion to compel, including meet-and-confer efforts and discovery dispute reports required by local practice, is also recoverable under Rule 37(a)(5)(A). *Id.*

Having reviewed Plaintiffs' submissions (Docs. 26 and 67) and in light of Defendants' failure to oppose the request, the Court finds that the requested fee award of $3,074.50 is reasonable. Accordingly, Plaintiffs' Motion for Attorney's Fees (Doc. 26) and Supplemental Request for Attorney's Fees (Doc. 67) is **GRANTED**.

Defendants shall pay Plaintiffs $3,074.50 in attorney's fees no later than February 27, 2026, payable to HKM Employment Attorneys LLP. Plaintiffs' counsel shall file a notice with the Court upon receipt of payment in full. If payment is not timely made, Plaintiffs' counsel shall file a notice with the Court on March 6, 2026, together with any motion seeking additional relief.

**SO ORDERED.**

Dated: February 10, 2026

DAVID W. DUGAN
United States District Judge