**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| NICHOLAS MUELLER et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. 24-cv-2321-DWD |
| ) | |
| CITY OF EAST ST. LOUIS, IL et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM & ORDER**

**DUGAN, District Judge:**

This matter is before the Court on Plaintiffs' Motion for Sanctions Including Default Judgment against Defendants City of East St. Louis and Robert Betts (Doc. 79) and the Court's Show Cause Order regarding the same (Doc. 80). The Court has reviewed the Motion, Defendants' Response to the Show Cause Order (Doc. 81), Plaintiffs' Reply (Doc. 83), and the record in its entirety. For the reasons set forth below, the motion is **GRANTED**. Default judgment is entered against Defendants City of East St. Louis and Robert Betts on all claims.

## I.  BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs Nicholas Mueller and Shonte Mueller, who are married, allege that Defendants retaliated against them for whistleblowing by terminating their employment. (Doc. 1). Plaintiffs assert claims against the City of East St. Louis Housing Authority; the City of East St. Louis; the East St. Louis City Manager, Robert Betts; the Mayor of East St. Louis, Charles Powell III ("Powell"); an East St. Louis Councilman, Courtney Hoffman II; an East St. Louis City Councilman, LaVondo Pulley; and an East St. Louis Housing

Authority Agent, Michael Collins. Nicholas Mueller was the Assistant Chief of Police for

the City, and Shonte Mueller was a Commissioner on the Board of the East St. Louis

Housing Authority. At issue here is the repeated noncompliance of two Defendants: The

City of East St. Louis and Robert Betts.

On April 7, 2025, pursuant to the undersigned's Case Management Order (Doc.

13), the parties submitted a joint discovery report regarding a series of missed deadlines

and inadequate responses to written discovery served on the City of East St. Louis.

(Attached hereto as Exhibit A). In the report, Plaintiffs alleged that the City missed the

original March 6, 2025 deadline for responding to Requests for Production and

Interrogatories, as well as two agreed extensions (to March 21 and April 4), and

ultimately served wholly inadequate responses consisting of only Nicholas Mueller's

personnel file and a single blanket objection refusing to answer any discovery directed to

Shonte Mueller. The report further detailed that, during conference calls, defense counsel

admitted he had been unable to obtain responses from his client despite repeated

attempts, and specifically disclosed on April 4, 2025 that (a) no internal correspondence,

emails, or communications had been reviewed or collected for production, and (b) the

City intended to object to all of Shonte Mueller's discovery requests on the ground that

she was not a City employee. Plaintiffs argued that both positions were legally baseless,

that any objections had been waived by the repeated untimely responses, and that the

City of East St. Louis was acting in bad faith.

After reviewing the report, the Court granted Plaintiffs leave to file a motion to

compel (Doc. 22), and Plaintiffs timely filed the motion on April 25, 2025 (Doc. 23).

Defendants Betts and the City of East St. Louis responded on May 2, 2025. (Doc. 24). Defendants argued that Plaintiffs' motion was based merely on "dissatisfaction with the provided answers" rather than any genuine deficiency, asserted that the City of East St. Louis has no legal authority over the separate East St. Louis Housing Authority and therefore has no obligation to respond to any discovery directed to Shonte Mueller, stated that they had been conducting a "diligent search" for responsive emails but had found very few documents, requested an additional 14 days to complete the search, and contended that sanctions (including attorney fees) were not warranted. (*Id.*). They further argued that, if Plaintiffs believed the answers were false or misleading, their remedy was to propound requests for admission rather than file a motion to compel. (*Id.*).

On May 12, 2025, the Court granted the motion in substantial part, finding that a majority of Defendants' responses were without basis, evasive, incomplete and/or non-responsive. (Doc. 25). The Court ordered supplemental responses and document production within 14 days and ordered the City to specify the steps and actions taken to review and collect responsive documents and correspondence within 14 days of production. (*Id*). The Court expressly reserved ruling on sanctions. (*Id.*).

Thereafter, Defendants produced virtually nothing responsive to the document requests, resulting in Plaintiffs to submitting a second joint discovery report. (Doc. 69-1). In that report, Plaintiffs detailed Defendants' ongoing failure to produce Nicholas Mueller's full compensation records, including pay stubs, payroll records, pension statements, and related documents critical for damages calculations, despite numerous follow-up emails and requests from Plaintiffs' counsel between November 17, 2025, and

3

January 16, 2026. Defense counsel repeatedly represented that meetings had been held with the City and that the records had been requested from the City's third-party administrator, yet no documents were ever produced. The report further noted that Defendants had produced no emails, texts, or other communications whatsoever, despite evidence of responsive materials appearing in Plaintiffs' own production and that of the Housing Authority. During Defendant Betts's deposition, he admitted under oath that he had never searched his email or phone for responsive communications and that no one had asked him to do so. (Doc. 69, p. 5; Doc. 69-1).[1] Plaintiffs argued that this pattern demonstrated willful obstruction of discovery.

Upon review of the second discovery report, the Court entered the following order:

> ORDER regarding the Plaintiffs' Discovery Report, which was informally submitted to the Court by email on January 22, 2026. The Court FINDS the Plaintiffs' submission complies with the Court's Case Management Order (Doc. 13, pgs. 1-2) by making a good faith attempt to resolve the ongoing discovery disputes without the Court's involvement. Considering Defendants, the City of East St. Louis and Robert Betts, failure to respond to Plaintiffs' attempts to resolve these discovery disputes, as well as the pending allegations regarding prior discovery abuses, and consistent with the Court's Case Management Order (Doc. 13, pgs. 1-2), Plaintiffs are GRANTED LEAVE to file a Motion to Compel regarding the reported, but unresolved, discovery disputes within 7 days of this date. Defendants are DIRECTED to file a Response to any Motion to Compel within 7 days. The Motion and Response, if filed, shall each be limited to 7 pages. In the event

---

[1] Betts testified as follows:
Q: "Have you looked through your e-mail to see if you have e-mails that relate to kind of the subject of this litigation?"
A: "No, I haven't."
Q: "You haven't gone through that?"
A: "No, not specifically."
Q: "And you haven't gone through your phone to look for text messages -- "
A: "No."
Q: " -- to see if -- Okay. Were you asked to?"
A: "No."

that no Motion to Compel is filed by Plaintiffs, and unless the parties inform the Court that a ruling is no longer necessary, the Court will proceed to resolve the discovery disputes based only upon the Plaintiffs Discovery Report. Additionally, Plaintiffs are GRANTED LEAVE to file a supplement to the pending motion for attorney fees (Doc. 26) within 7 days of this date. Defendants, the City of East St. Louis and Robert Betts, may file a response to any such supplement within 7 days. The supplement to the motion for attorney fees and response, if any, shall each be limited to 5 pages.

(Doc. 66).

Plaintiffs filed a supplemental briefing in support of their earlier filed motion for attorney's fees on January 25, 2026. (Doc. 67). In that supplemental briefing, Plaintiffs indicated that, to preserve the parties and the court's resources and to minimize associated fee requests, Plaintiffs were electing to stand on the January 22, 2026 discovery report as opposed to filing a second motion to compel. (*Id*). The City and Betts did not respond.

On February 10, 2026, the Court issued a second order addressing the ongoing discovery issues. (Doc. 69). It required production of Nicholas Mueller's full compensation records within 7 days, a renewed good-faith ESI search and production within 10 days, sworn declarations to be filed with the Court within 7 days after production, payment of $3,074.50 in attorney fees by February 27, 2026, and a $100-per-business-day coercive sanction for non-compliance. The Order further provided that any failure to comply would result in the Court ordering Defendants, at their sole expense, to retain a neutral forensic vendor to image the relevant devices and email systems and collect responsive material. (*Id*., pp. 7-8).

5

Defendants took no action in response to the Court's February 10, 2026 Order. Plaintiffs therefore filed the instant motion for sanctions. (Doc. 79). Plaintiffs reported that, as of March 6, 2026, nearly one month after the second Court Order and despite the explicit directives contained therein, Defendants had failed to comply with any requirement imposed by that Order. Specifically, Defendants had not produced Nicholas's compensation records (due February 17, 2026), had not conducted or produced the results of any renewed good-faith search for responsive emails, text messages, or electronic communications from Defendant Betts or other City employees named in the lawsuit (due February 20, 2026), had not filed the required sworn declarations identifying custodians, devices, accounts, data sources, date ranges, and search methods, had not paid the $3,074.50 in attorney's fees (due February 27, 2026), and had not paid the daily penalties of $100 per business day for noncompliance.

On March 9, 2026, the Court issued an Order to Show Cause. (Doc. 80). Defendants responded on March 24, 2026. (Doc. 81). Defendants represent that they paid the $3,074.50 in attorney's fees to Plaintiffs' counsel on March 10, 2026. They further state that they have supplemented their responses to Request for Production No. 9, consulted with Plaintiffs' counsel and agreed upon a forensic service provider to be engaged if the Court orders imaging, explained that payroll records prior to 2023 were purged by the City's third-party administrator (of which the City was unaware), and noted that Nicholas Mueller's  pension records are maintained by the East St. Louis Police Pension Fund rather than the City. While acknowledging prior difficulties complying with the Court's discovery orders, Defendants assert that their conduct has not been willful or in bad faith,

that discovery has otherwise progressed (including multiple depositions), and that they have placed the matter on successive City Council agendas with two council members attending the mediation, which was scheduled for March 27, 2026, in an effort to resolve both the discovery issues and the litigation as a whole.[2] Defendants request that the Court deny the Motion for Sanctions and permit the case to proceed to trial on the merits.

In their Reply to Defendants' Response to the Court's Show Cause Order, filed March 31, 2026, Plaintiffs represent that Defendants paid the $3,074.50 in attorney's fees only on March 10, 2026, four days after Plaintiffs filed the instant Motion for Sanctions and more than a month after the February 27 deadline, and that Defendants still owe an additional $7,771.50 in fees incurred in preparing that motion under Rule 37(b)(2)(C).

Plaintiffs assert that Defendants mischaracterize the February 10, 2026 Order by claiming they have "consulted with Plaintiff's counsel and agreed on a forensic service firm," when, in Plaintiffs' view, forensic imaging was automatically triggered by Defendants' total failure to produce any responsive emails, text messages, or electronic communications by February 20, 2026, or to file the required sworn declarations.[3] Plaintiffs further clarify that on March 9, 2026, Defendants' counsel provided the name of two forensic service providers, and the undersigned confirmed that one of the providers appeared to be sufficient, but nothing further was discussed or agreed on. Additionally, Plaintiffs state that Defendants produced only partial compensation

---

[2] The mediation was held on March 27, 2026, but the case did not settle. (Doc. 82).

[3] The February 10, 2026 Order provides as follows: "If Defendants fail to timely comply with any portion of this Order, or if the production is materially deficient, the Court will, without further briefing, order Defendants – at their own expense – to retain a neutral forensic vendor to image the relevant devices and email systems to collect responsive material." (Doc. 69, pgs. 7-8).

records (March–October 2023 pay stubs) on March 20, 2026 and have failed to pay the coercive daily penalty. Plaintiffs vigorously dispute Defendants' claims of good-faith diligence, emphasizing the extended pattern of willful noncompliance with both the May 12, 2025 and February 10, 2026 Orders, and maintain that the resulting prejudice to Plaintiffs warrants the severe sanctions sought.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 37(b)(2)(A) expressly authorizes a district court to impose "just orders," including rendering a default judgment against the disobedient party, when a party fails to obey an order to provide or permit discovery. FED. R. CIV. P. 37(b)(2)(A)(vi). Independently, a federal court possesses inherent authority to sanction litigation misconduct that abuses the judicial process, including willful violations of its orders. *Chambers v. NASCO*, Inc., 501 U.S. 32, 43–46 (1991); *Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 775–76 (7th Cir. 2016). Either source of power requires a finding that the party acted with a degree of culpability exceeding simple inadvertence or mistake; specifically, willfulness, bad faith, or fault. *Ramirez*, 845 F.3d at 776 (citing *Societe Internationale pour Participations Industrielles et Commerciales, S.A. v. Rogers*, 357 U.S. 197, 212 (1958)); *Nelson v. United States*, 712 F. App'x 573, 575–76 (7th Cir. 2018). The requisite facts need only be established by a preponderance of the evidence. *Ramirez*, 845 F.3d at 778–81 (overruling *Maynard v. Nygren*, 332 F.3d 462 (7th Cir. 2003), to the extent it required clear and convincing evidence).

In determining whether the severe sanction of default judgment is warranted, the Court considers the full circumstances of the case, including (1) the party's pattern of and

8

personal responsibility for the violations, (2) the resulting prejudice to the opposing party, (3) whether lesser sanctions have proven unavailing, and (4) the overall proportionality of default to the misconduct. *Nelson*, 712 F. App'x at 576; *e360 Insight, Inc. v. Spamhaus Project*, 658 F.3d 637, 642–43 (7th Cir. 2011); *Domanus v. Lewicki*, 288 F.R.D. 416, 419–20 (N.D. Ill. 2013), aff'd, 742 F.3d 290 (7th Cir. 2014). A clear record of delay or contumacious conduct, especially where monetary penalties and explicit warnings have failed to secure compliance, supports the conclusion that lesser sanctions would be ineffective and that default judgment is proportionate. *S.E.C. v. Homa*, 514 F.3d 661, 678 (7th Cir. 2008); *Domanus*, 288 F.R.D. at 421–22.

### III.    ANALYSIS

In the instant case, the record establishes by a preponderance of the evidence that Defendants City of East St. Louis and Robert Betts have engaged in willful, bad-faith, and contumacious noncompliance with two successive Court orders spanning nearly ten months. The May 12, 2025 Order required Defendants to review, collect, and produce responsive documents and to articulate the steps taken to do so. Instead, Defendants produced virtually nothing, and Defendant Betts admitted under oath during his deposition that he had never searched his own email or phone, the very devices most likely to contain responsive communications, and that no one had even asked him to do so. Faced with this continued defiance, the Court issued a second, even more explicit Order on February 10, 2026. That Order directed production of Nicholas Mueller's full compensation records within seven days, a renewed good-faith ESI search and production within ten days, sworn declarations identifying custodians and search

methods within seven days after production, payment of $3,074.50 in attorney's fees by February 27, 2026, and a daily $100 coercive penalty for noncompliance. The February 10 Order also expressly provided that if Defendants failed to timely comply with any portion of the Order, the Court would, without further briefing, order Defendants, at their sole expense, to retain a neutral forensic vendor to image the relevant devices and email systems and collect responsive material.[4]

Defendants did nothing for nearly a month. They produced no compensation records by the February 17 deadline, conducted no renewed ESI search and produced no emails or text messages by the February 20 deadline, filed no sworn declarations, paid no attorney's fees by the February 27 deadline, and paid none of the accumulating daily penalties. Only after Plaintiffs filed their Motion for Sanctions on March 6, 2026, and the Court issued its Show Cause Order on March 9, 2026, did Defendants make any movement, and even then it was late and incomplete. The $3,074.50 in attorney's fees was paid four days after the motion; only a handful of 2023 pay stubs (far short of the full compensation records ordered) were produced on March 20, 2026; an ESI search has not been completed; and no responsive emails or texts have been produced. Instead, Defendants merely represent that they have consulted with Plaintiffs' counsel and agreed upon a forensic service provider to be engaged if the Court so orders. This is not good-

---

[4] Plaintiffs contend that, following noncompliance, Defendants were immediately required to retain a neutral forensic vendor. Although the February 10, 2026 Order stated that the Court "will without further briefing, order Defendants" to retain a neutral forensic vendor upon noncompliance, the Court has not yet entered any such specific directive. Accordingly, while Defendants' failure to produce the required materials by the February 20, 2026 deadline satisfied the condition precedent for that relief, the Court does not treat their pre-order failure to retain a forensic vendor on their own initiative as an independent violation of the February 10 Order.

faith bureaucratic delay; it is the type of flagrant bad faith and willful noncompliance that justifies default judgment. *See Moore v. Doe*, 108 F.3d 1379 (7th Cir. 1997); *Newman v. Metropolitan Pier & Exposition Auth.*, 962 F.2d 589, 591 (7th Cir.1992); *Domanus*, 288 F.R.D. at 421–22.

Defendants' reliance on internal municipal bureaucracy, such as the need for successive City Council agendas and approvals, is insufficient to avoid sanctions. Governmental defendants receive no special exemption from their Rule 37 obligations merely because of internal approval processes. *See* e.g., *Cowell v. Illinois Dep't of Hum. Servs.*, No. 3:21-CV-478-NJR, 2023 WL 2184815, at *2–3 (S.D. Ill. Feb. 23, 2023) (rejecting a state agency's claim that internal confusion over "which office should take responsibility for payment" justified ignoring multiple court orders, and holding that "[i]nternal confusion or processing does not excuse [counsel's] lack of effort in notifying the Court of the challenges he faced").

Defendants' additional post-show-cause excuses, such as asserting that they only recently learned that a third-party payroll administrator had purged pre-2023 records and that pension data is maintained by a separate fund, are equally unavailing. These obstacles could and should have been discovered and communicated to Plaintiffs and the Court long ago rather than ignored for nearly a full year.

Defendants' claim that "discovery has otherwise progressed," including through depositions, is irrelevant. The specific orders at issue required production of discrete categories of documents and information that go to the heart of Plaintiffs' damages

11

calculations and key liability theories. Partial or belated compliance does not cure months of defiance.

At this advanced stage of the litigation (discovery closed on March 24, 2026, dispositive motions are due in approximately one month, trial is set for August 2026, and mediation already completed albeit unsuccessfully) the resulting prejudice to Plaintiffs and disruption of the Court's docket warrant sanctions regardless of Defendants' last-minute assertions of good faith. *See Domanus v. Lewicki*, 742 F.3d 290, 294 (7th Cir. 2014). Moreover, the Court's $100-per-business-day coercive sanction, which now totals $3,100.00 and continues to accrue,[5] has proven entirely ineffective. Defendants' willingness to absorb the accumulating fine rather than comply demonstrates that monetary sanctions alone are futile.

The prejudice to Plaintiffs is both severe and ongoing. Without the required compensation records and the emails/text messages that Defendant Betts admittedly never searched for, Plaintiffs cannot properly calculate damages, retain and prepare an economic expert, or fully develop their retaliation and conspiracy claims.

Defendants have now demonstrated, through repeated and willful disregard of explicit court orders, deadlines, accumulating daily fines, and the threat of forensic imaging, that no sanction short of default judgment will vindicate the Court's authority or restore the integrity of the discovery process. Default judgment is the proportionate,

---

[5] Although Plaintiffs argue in their Reply that separate $100.00 per business day penalties accrue independently for each unmet requirement of the February 10, 2026 Order, the Court interprets the coercive sanction provision as imposing a single penalty of $100.00 per business day that accrues until Defendants achieve full compliance with all provisions of that Order.

necessary, and just response under both Rule 37(b)(2)(A)(vi) and the Court's inherent authority. Plaintiffs' Motion for Sanctions is therefore granted, and default judgment will be entered against Defendants City of East St. Louis and Robert Betts on all claims asserted against them, together with the ancillary relief detailed below.

## IV.   CONCLUSION

For the reasons set forth above, Plaintiffs' Motion for Sanctions Including Default Judgment (Doc. 79) is **GRANTED**. **IT IS HEREBY ORDERED** as follows:

1. Default judgment is entered against Defendants City of East St. Louis and Robert Betts on all claims asserted against them in this action.

2. Within seven (7) days of the date of this Order, Defendants City of East St. Louis and Robert Betts shall retain, at their sole expense, a neutral forensic vendor whose qualifications are subject to approval by Plaintiffs' counsel or the Court. The vendor shall perform forensic imaging of all relevant devices, email accounts, and electronic data sources used by Defendant Betts and all City employees named in this lawsuit during the relevant time periods. The forensic imaging shall be completed, and all responsive materials produced directly to Plaintiffs' counsel, within fourteen (14) days after the vendor is retained.

3. Within twenty-one (21) days of the date of this Order, Defendants shall pay to Plaintiffs the accrued daily penalty imposed by the Court's February 10, 2026 Order, which as of the date of this Order amounts to $3,100.00. The $100.00 per business day coercive sanction shall continue to accrue until Defendants have (1) fully complied with every remaining obligation under the February 10, 2026 Order and (2) paid all accrued sanctions in full. Upon full compliance and payment, the daily fine shall cease to accrue;

4. Defendants shall pay to Plaintiffs' counsel the sum of $7,771.50 for reasonable attorney's fees incurred in preparing the Motion for Sanctions and Reply, pursuant to Federal Rule of Civil Procedure 37(b)(2)(C). This payment shall be made within fourteen (14) days of this Order.

5. The amount of damages, if any, to which Plaintiffs are entitled against Defendants City of East St. Louis and Robert Betts will be determined at a later date, after such further proceedings as the Court deems appropriate. This action shall proceed against the remaining Defendants.

6. Given the discovery delays detailed herein, the Court *sua sponte* extends the discovery deadline to May 22, 2026 and the dispositive motion deadline to June 22, 2026. The final pretrial conference and trial dates are **VACATED** and will be re-set by separate order.

**SO ORDERED.**

Dated: April 6, 2026

_____
DAVID W. DUGAN
United States District Judge